[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 336.]

THE STATE EX REL. GREATOREX, APPELLEE, *v.* INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. Greatorex v. Indus. Comm.*, 1997-Ohio-384.]

*Workers' compensation—Industrial Commission abuses its discretion in denying*

*claimant's request for compensation for loss of use of both legs and right*

*arm, when.*

(No. 95-542—Submitted May 20, 1997—Decided August 6, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD02-272.

————————————

{¶ 1} Appellee-claimant, Terrence A. Greatorex, was injured on September 16, 1983 in the course of and arising from his employment with the Westin Hotel. The injury occurred when solder exploded onto the left side of his face and into his left eye. Within a half hour of the accident, claimant was experiencing optic neuritis in his right eye. Appellant Industrial Commission of Ohio allowed his workers' compensation claim for "injury to eyes."

{¶ 2} Claimant was hospitalized for ten days. Shortly after his discharge he began to have muscle weakness in his legs. When the condition failed to improve, he was referred to a neurologist, who ultimately diagnosed multiple sclerosis.

{¶ 3} Claimant moved the commission to additionally allow his claim for "aggravation of pre-existing multiple sclerosis." He accompanied his motion with a report from Dr. John H. Feibel, who wrote:

"The patient has multiple sclerosis; the question is whether the trauma to the left eye could have triggered the subsequent events including optic neuritis in the right eye being aggravated and subsequent progression of symptoms of multiple sclerosis. My opinion is that it is within the realm of possibility that that scenario could have occurred. I have seen another patient who stated that exhaust dust in an

eye led to optic neuritis and the development of abnormalities in the spinal fluids suggestive of multiple sclerosis. While of course this relationship in our patient and Mr. Greatorex cannot be proven, I do take at face value his history with the accompanying documentation and do not believe that we can dismiss this possible relationship lightly."

{¶ 4} Dr. Gerald S. Steiman examined claimant for the commission. He reported:

"I have reviewed Mr. Greatorex's neurological examination, his past medical records, his job description and his current complaints. It is my opinion that the claimant does have the condition of multiple sclerosis. It is within the realm of reasonable medical certainty that the claimant's multiple sclerosis condition was aggravated and accelerated by the industrial injury of September 16, 1983. I would like to qualify this statement by the fact that it is my opinion that this is a significantly rare condition. Ordinarily, it is quite rare for multiple sclerosis to be triggered by trauma. In this situation, the presence of an optic neuritis occurring within 30 minutes of the injury clearly dictates a strong association. It is beyond coincidence to suggest the optic neuritis occurred within 30 minutes of a left eye injury and has nothing to do with it.

"In summary, therefore, it is my opinion that this claim should be allowed for the aggravation of a pre-existing multiple sclerosis.

"In addition, I believe that the aggravation should be limited to the right eye optic neuritis. I do not believe that the solder accident within the left eye exacerbated all future episodes of multiple sclerosis, but rather, soley [*sic*] that the episode that occurred within one-half hour of the claimant's symptomatology. The optic neuritis is cleared and according to Dr. Wander's ophthalmological examination of November, 1983, Mr. Greatorex had 20/20 vision in the right and 20/30 vision in the left eye.

"In conclusion, it is my opinion that the injury sustained within claim 83-20219 resulted in an aggravation of a pre-existing multiple sclerosis. This [was] manifested by the presence of a right eye optic neuritis. This condition has subsequently resolved, therefore, substantial aggravation of [it] was temporary in nature."

**{¶ 5}** On December 18, 1987, a district hearing officer granted claimant's request. The order read:

"Claimant's motion filed 04-30-87 requesting additional allowance of aggravation of pre-existing multiple sclerosis is approved. District Hearing Officer finds this condition is causally related to the industrial injury of date and previously recognized conditions in the claim. Therefore, this condition of aggravation of pre-existing multiple sclerosis is approved. This order is based on medical reports of Dr. Steiman, Dr. Fields [*sic*, Feibel] and testimony of claimant."

**{¶ 6}** The order was not appealed.

**{¶ 7}** Claimant's condition continued to deteriorate to the point where he was forced to use a wheelchair. In late 1988, claimant applied for permanent total disability compensation. A May 31, 1988 letter from Dr. Henry T. Grinvalsky indicated:

"This is in regard to Mr. Terrence Greatorex who has chronic progressive multiple sclerosis for which he has been treated by the Neurology Service at the Cincinnati VA Medical Center during the past several years. He has paralysis and spasticity of both legs, impaired sensation in his upper extremities and impaired ability to perform fine motor tasks with his hands. These handicaps leave him unable to walk without assistance or function safely at home during the day (cooking, climbing stairs, etc.). He requires the presence of his wife or an attendant during the day. In short, Mr. Greatorex is permanently and totally disabled."

**{¶ 8}** Dr. Grinvalsky reiterated this opinion in November 1991.

{¶ 9} Also on file was a combined-effects review by Dr. Walter A. Holbrook, who wrote:

"Claimant has undergone multiple physical evaluations. In the course of these evaluations he has consistently revealed that he has irritation of his eyes and has to rub them frequently[,] especially the left eye. He also has aggressive weakness of his limbs and has inability to walk. Opthamological examination shows that he had an 80% dinuted [*sic*] cornea at the onset of the injury. He has extreme eye pain in the left and he rubs it. His visual acuity is 20/40 in the right eye -2 at distance and 20/30 near vision in the right eye. Left eye 20/40 -1 far vision and 20/30 near vision. Ocular mobility is normal. There is no paralysis, no pupil abnormality. There are deposits of black material in the conjunctiva and cornea on the slit lamp examination in the left eye. There is no cataract. There is [*sic*] lack of tears and chronic ocular dryness.

"Neurological evaluation [reveals that] there is no evidence of confusion. He is wheelchair bound and has to have help to stand. There is optic power in both optic fundi. Sensory [examination] of the face is normal. There is no double vision. Speech is not slurred. Motor of the face is normal. There is no vertigo. There is spasm in the upper and lower extremities. Deep tendon reflexes in biceps and triceps are 1+ right and left. There is decreased sensory to pinwheel and light touch over the upper and lower extremities. Grip in the right hand is 6 kilos, left hand 38 kilos[,] and there is lack of coordination in the upper extremities. It is hyper[-]reflexive in the lower extremities at the knees and ankles [and] when he walks with help there is ataxia.

"Claimant's impairments have lasted for close to 6 years and it is within reasonable medical probability and certainty to conclude that the impairments are now permanent and further therapy will not substantially change the claimant's clinical picture.

"In the opinion of this reviewer the claimant is not only precluded from performing the duties of his usual and customary occupation but is also precluded from performing the duties of any substantial and gainful employment. Claimant is permanently and totally impaired from the combined effects of the allowed conditions of the industrial injury."

{¶ 10} On December 3, 1991, the commission awarded permanent total disability compensation, finding:

"This order is based particularly upon the reports of Doctor(s) Grinvalsky and Holbrook, evidence in the file and/or evidence adduced at the hearing.

"Claimant is 36 years old with an Associates Degree in liberal arts education and has a work history which includes five years in the U.S. Air Force in security and civil engineering and maintenance engineering. Claimant has additional training skills of building maintenance and mechanical maintenance. The claimant's permanent partial disability of 20% (opthamological) was found by Dr. Pryor, 3% neurological as found by Dr. Louis preclude him from performing any sustained remunerative employment. The claimant is P.T.I. as found by Dr. Walter Holbrook reviewing on the combined effects of the allowed injuries which prevent him from returning to sustained remunerative employment. Claimant's treating neurologist, Henry Grinvalsky, M.D. stated that he is P.T.D."

{¶ 11} In 1992, claimant requested compensation for "the loss of use of both legs and the right arm as a result of this industrial accident." He attached a report from Dr. Martin Fritzhand, who documented further deterioration and a complete loss of use in the affected areas. Commission specialist Dr. Arnold R. Penix stated:

"The claimant suffered injury to his eyes on 9/16/83. At that time he had apparent pre-existing and previously undiagnosed multiple sclerosis. The industrial file indicates that the claimant subsequently resolved his ocular complaints with medical management of his multiple sclerosis. His industrial claim has been modified and the condition of aggravation of pre-existing multiple sclerosis has

been allowed. On reviewing the industrial file Dr. Steiman had examined the claimant and recommended that aggravation of pre-existing multiple sclerosis with limitation to aggravation of the right eye optic neuritis be allowed. The claim allowance as list[ed] above would include the entire disease process of multiple sclerosis. Multiple sclerosis is a demyelonating [*sic*, demyelinating] neurological disease which affects the central nervous system. It has no known cause and is progressive at variable rates and there is no consistently effective treatment for this. The claimant has obviously developed near complete paraplegia with associated partial loss of function of the right upper extremity. If the claim is considered as listed with aggravation of pre-existing multiple sclerosis as being a portion of the claim, I would rate the claimant's impairment at 100% permanent[ly] and totally impaired.

"If the claimant's allowance is interpreted as injury to the eye with aggravation of the multiple sclerosis being limited to the optic neuritis, the claimant's upper and lower extremity paralysis would be considered unrelated to the industrial injury of 9/16/83."

{¶ 12} A district hearing officer denied claimant's motion:

"The District Hearing Officer finds that the aggravation of multiple sclerosis is limited to the optic neuritis based on Dr. Steiman's 8/28/87 report. Therefore, District Hearing Officer finds that claimant's loss of use of both legs and right arm is not related to the industrial injury of 9/16/83 based on Dr. Penix's 7/28/93 report.

"This order is based upon the medical report(s) of Dr[s]. Penix, Steiman, the evidence in the file and the evidence adduced at hearing."

{¶ 13} The order was administratively affirmed.

{¶ 14} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his

request for compensation for loss of use of both legs and right arm.  The court of appeals agreed and issued a writ of mandamus.

{¶ 15} This cause is now before this court upon an appeal as of right.

_____

*Harris & Burgin* and *Cynthia C. Felson,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellants.

_____

***Per Curiam.***

{¶ 16} The commission denied claimant's motion for loss of use of both legs and right arm after finding that claimant's arm and leg problems were not part of the allowed conditions in the claim.  Claimant successfully challenged that finding in the court below and, for the reasons to follow, the judgment of the court of appeals is affirmed.

{¶ 17} The claim's additional allowance was denominated simply "aggravation of pre-existing multiple sclerosis," with no qualification or restriction. When the commission effectively declared that the additional allowance encompassed only the initial episode of optic neuritis that followed the injury, the court of appeals deemed the declaration to be a modification of the allowance, which could only be accomplished through the exercise of continuing jurisdiction. Because none of the prerequisites to the invocation of continuing jurisdiction had been met, the court of appeals concluded that the commission abused its discretion.

{¶ 18} The commission responds that it did not "modify" the allowance; it simply "interpreted" it.  It asserts that modification was unnecessary because the additional allowance, from its inception, was limited to the right eye optic neuritis. It bases this latter contention on its reliance on Dr. Steiman's report in additionally allowing the multiple sclerosis ("MS") condition.  Dr. Steiman stated that the neuritis was the only component of claimant's MS that was industrially induced.

Therefore, by relying on this report, the commission claims that it was clear that the newly allowed condition was limited to claimant's neuritis.

{¶ 19} The commission's logic fails because it ignores its equal reliance on Dr. Feibel's report in additionally allowing the MS. Because Dr. Feibel put no qualification on claimant's MS, the limitation that the commission alleges cannot be inferred from the order.

{¶ 20} The commission's own actions further undermine its position. In 1991, the commission—citing Drs. Grinvalsky's and Holbrook's reports—found claimant to be permanently and totally disabled. Dr. Grinvalsky made no mention of claimant's neuritis, attributing claimant's inability to work instead exclusively to claimant's arm and leg problems. Dr. Holbrook also discussed these arm and leg problems in great detail. Thus, the commission's award of permanent total disability compensation was based largely, if not completely, on the claimant's arm and leg symptoms. This negates the commission's assertion that neuritis has been deemed the sole compensable facet of claimant's allowed MS condition since the claim's inception.

{¶ 21} The commission's reliance on *State ex rel. Robinson v. Indus. Comm.* (1984), 11 Ohio St.3d 238, 11 OBR 551, 465 N.E. 2d 78, is misplaced. Robinson sustained an industrial foot injury in 1977. In 1980, an examining physician noted that claimant was also diabetic and that the diabetes could be the cause of claimant's vision and vascular problems.

{¶ 22} Later medical examination attributed a low amount of impairment to claimant's foot condition, but found that claimant's diabetes and its complications rendered claimant unemployable. Claimant then sought additional allowance of the diabetes, which the commission allowed as "aggravation of pre-existing diabetic condition." A subsequent application for permanent total disability compensation, however, was denied after the commission concluded that claimant's inability to work was unrelated to the allowed conditions.

**{¶ 23}** Claimant challenged this determination in mandamus. We upheld the commission's order, writing:

"It is essentially appellant's position that by reason of the allowance of the claim for aggravation of preexisting diabetes, he is entitled to have all aspects of his diabetic condition considered in determining whether he is permanently and totally disabled. This is incorrect. While it is unclear what the commission intended in granting this additional allowance, there is nothing in the record to suggest that it includes complications from appellant's diabetes such as vision impairment or atherosclerosis which might contribute to his alleged total disability." *Id*. at 240, 11 OBR at 552, 465 N.E.2d at 80.

**{¶ 24}** The present case is distinguishable from *Robinson* for two reasons. First, while the extent of the commission's additional allowance in *Robinson* may have been unclear, this is not true here. Again, the circumstances of the commission's award of permanent total disability compensation make it clear that, at least in 1991, claimant's leg and arm difficulties were deemed an allowed part of his claim.

**{¶ 25}** Second, *Robinson* does not indicate when claimant's diabetic complications arose. If the claimant already had diabetes-induced vision and vascular problems when he was injured, the commission may have acted properly in refusing to allow the claimant to bring in what would be preexisting, nonindustrial conditions on the coattails of claimant's diabetic condition. In this instance, however, claimant's leg and arm problems indisputably arose after his industrial accident. Thus, some of the considerations that may have prompted the result in *Robinson* are not present here.

**{¶ 26}** We, therefore, recognize claimant's arm and leg symptomatology as being part of the allowed conditions in this claim. The commission's denial of claimant's motion for loss of use of both legs and right arm could be accomplished only by resort to continuing jurisdiction. R.C. 4123.52. Because there is no

evidence, or even an allegation, of any of the prerequisites necessary for the exercise of continuing jurisdiction, the commission abused its discretion in finding claimant's leg and arm conditions to be unrelated to the allowed conditions.

{¶ 27} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————